IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WALTER LEROY JEFFERS and ELIZABETH JEFFERS, | ) ) ) |
| *Plaintiffs* | ) |
| vs. | ) Case No. 3:14-CV-1965 RLM-MGG ) |
| BIOMET, INC., *et al.*, | ) ) |
| *Defendants* | ) |

## OPINIONS AND ORDER

Biomet seeks summary judgment in this case contending that it is entitled to judgment on the merits as a sanction for the plaintiffs' failure to preserve the M2a devices that were removed during Walter Jeffers's revision surgeries in April 2014. For the following reasons, that motion is denied.

Summary judgment is only appropriate if the pleadings, discovery materials, disclosures, and affidavits demonstrate that there are no genuine issues of material fact, and that the non-moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-92 (7th Cir. 2011). The record in this case doesn't support the relief requested.

On March 7, 2013 – more than a year before Mr. and Mrs. Jeffers filed their lawsuit – I entered an Explant Preservation Order in MDL 2667 requiring the plaintiffs to "make good faith efforts to ensure that non-party medical practitioners, hospitals, and vendors engaged to facilitate device preservation preserve [their] Explanted M2a Devices that may be relevant to the claims,

defenses, or subject matter of [their] case consistent with this order...." [Doc. No. 279 in 3:12md2391]. That order also provided:

> III. <u>OBTAINING EXPLANTED M2a DEVICES</u>
>
> A. <u>M2a Devices that...are not in either party's possession</u>
> With respect to M2a Devices that...have been explanted but are not in either party's possession, counsel for a plaintiff may elect to obtain plaintiff's Explanted M2a Device from plaintiff's surgeon or the hospital where the surgery occurred and sent it to a contract laboratory of plaintiff's choice or a designated storage facility. If plaintiff's counsel does not elect to obtain an Explanted M2a Device within 60 days of the revision surgery, Biomet will make arrangements for it to be sent to Malcolm Naylor at Biomet in Warsaw, Indiana.

[Doc. No. 279].

The Jefferses' attorney, Christopher Shakib, filed this suit on April 17, 2014, the day after Mr. Jeffers's first revision surgery, and almost a week before his second, so it's reasonable to assume that he was retained before the first revision, although Mr. Jeffers said in his deposition that he didn't know when he contacted an attorney. When Mr. Shakib filed the complaint in April 2014, he already had a case pending in this MDL docket, and knew or should have known about the Explant Preservation Order. That knowledge may be imputed to Mr. and Mrs. Jeffers, *see* <u>Washington v. Parkinson</u>, 737 F.3d 470, 473 (7th Cir. 2013); <u>Frey v. Fraser Yachts</u>, 29 F.3d 1153, 1158 (7th Cir. 1994), but the inquiry into whether Biomet is entitled to judgment as a sanction for failing to comply with the order doesn't stop there.

To prevail on its motion, Biomet has to show that the Jefferses' efforts to obtain the explanted devices and preserve them weren't made in good faith, *e.g.*, that they acted willfully or in bad faith ("for the purpose of hiding adverse information"), Trask-Morton v. Motel 6 Operating L.P., 534 F.3d 672, 681 (7th Cir. 2008); Ramirez v. T&H Lemont, Inc., 845 F.3d 772, 781 (7th Cir. 2016), or that the failure to preserve the explanted devices was their "fault" – their actions or failure to act to preserve the devices were objectively unreasonable. Marrocco v. General Motors Corp., 966 F.2d 220, 224 (7th Cir. 1992). It hasn't done that.

Mrs. Jeffers attests that she and her husband asked Dr. Lincoln, the treating surgeon, to save both of the implants before Mr. Jeffers's first revision surgery in April 2014, that Dr. Lincoln said he would, and that his assistant told them at a follow-up appointment that the devices had been saved and could be picked up on May 30, 2014. When they returned to Dr. Lincoln's office on May 30, Mr. and Mrs. Jeffers learned that the implants were missing. At some point after that, the hospital informed the Jefferses "that the implants were not preserved because a 'doctor's hold' was never placed on them."

Mr. and Mrs. Jeffers' contend that it was reasonable for them to rely on Dr. Lincoln's representations, and that Dr. Lincoln's office lost the devices more than a year before they became subject to the preservation order in October 2014, so it was impossible for them to comply with the order.

Biomet sees things differently. It asserts that a verbal request to save the explanted devices, without more, can't constitute a good faith effort to ensure that the devices are preserved. But it cites no supporting authority. Mrs. Jeffers attests that she asked Dr. Lincoln to save the implants after they were removed, and when she went to retrieve them from him on May 30, 2014, she learned they had been lost.[1] Those statements at least create a genuine issue of fact regarding the reasonableness of the Jefferses' actions to obtain and preserve the devices and their ability or inability to comply with the preservation order. Biomet hasn't presented any evidence which, if true, would show that the Jefferses acted willfully and/or in bad faith when they failed to obtain and preserve the explanted M2a devices or that they alone were at fault for failing to do so.

The Explant Preservation Order unequivocally states that Biomet can and "will" make arrangements to acquire the device, if the plaintiffs don't. The Jefferses filed their complaint on April 17, 2014, a day after Mr. Jeffers's first revision surgery and almost a week before his second revision. It's not clear when Biomet received the complaint, but it filed an answer on May 16, 2014, when it was well aware of its rights and obligations under the Explant Preservation Order. There's

---

[1] Biomet asserts in its reply that Mrs. Jeffers's affidavit shouldn't be considered because it contains inadmissible hearsay statements attributable to unnamed individuals. Citing Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Tital Int'l, Inc., 533 F.3d 555, 562 (7th Cir. 2008); Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997). While the statements Mrs. Jeffers attributes to Dr. Lincoln and his assistant might be inadmissible (or might be admissible if offered for a nonhearsay purpose), Mrs. Jeffers can and did attest to her own actions and knowledge, and those statements create genuine issues of fact precluding summary judgment in this case.

no evidence to suggest that Biomet took any steps to obtain and preserve Mr. Jeffers's explanted devices after the revision surgeries in April 2014, or, if it did, what steps it took and when.

The undisputed evidence shows that Mr. and Mrs. Jeffers assumed their physician had saved the devices, but learned in May 2014 that he hadn't done so. Biomet says much about what it perceives to be a discrepancy between statements Mrs. Jeffers made in her affidavit about the timing of their discovery and information contained in the Plaintiff Fact Sheet that was served on Biomet's counsel on June 13, 2014 – specifically Mr. Jeffers's representation that plaintiffs were "attempt[ing] to confirm the removed components are located at the office of [the treating surgeon]." Biomet contends that Mrs. Jeffers's affidavit is a "self-serving revision of a prior, sworn statement" and a "sham", and shouldn't be considered. Citing Bank of Illinois v. Allied Signal Safety Restraint Sys., 75 F.3d 1162, 1168 (7th Cir. 1996). But it's not clear when Mr. and Mrs. Jeffers provided their attorney with the answers to the questions posed in the Plaintiff Fact Sheet. Biomet received the completed fact sheet only a few days after Mr. and Mrs. Jeffers discovered Dr. Lincoln didn't have the implants. Based on the record before me, I would be hard-pressed to find that Mrs. Jeffers' affidavit was a "sham affidavit."

There's no evidence regarding what steps, if any, either party made after May 2014 to locate and preserve the explanted devices, or when the devices were

5

actually lost or destroyed. Both parties had a right under the Explant Preservation Order to obtain and test the devices, both were required to use non-destructive retrieval analysis protocols that were "designed to enable preservation and analysis," absent consent of the other party, and both have been prejudiced by the loss of the devices before any testing could be completed. Whether it was reasonable for the Jeffers to rely on representations made by Dr. Lincoln's assistant about the location of the explanted devices and who's at fault for failing to obtain and preserve the devices are questions of fact that I can't resolve on this record or summary judgment.

Accordingly, Biomet's motion [Doc. No. 171] is DENIED.

SO ORDERED.

ENTERED:   December 18, 2018

/s/ Robert L. Miller, Jr.
Judge, United States District Court